123 P.3d 823 (2005)
155 Wash.2d 858
HOLMES HARBOR SEWER DISTRICT, a special purpose municipal corporation, Respondent,
v.
HOLMES HARBOR HOME BUILDING LLC, a Washington limited liability company, Petitioner,
FRONTIER BANK; P.O. Kerr, a partnership, Joseph Seabeck and Jane Doe Seabeck, husband and wife and the marital community comprised thereof, Defendants.
No. 76062-4.
Supreme Court of Washington, En Banc.
Argued September 13, 2005.
Decided November 23, 2005.
Elaine Louise Spencer, Graham & Dunn PC, Seattle, for Petitioner/Appellant.
Rosemary Anne Larson, Michael Paul Ruark, Attorney at Law, Bellevue, for Appellee/Respondent.
JOHNSON, J.
¶ 1 This case requires us to determine whether, under chapter 57.08 RCW, a local sewer district may impose monthly charges against unimproved lots that are not connected to the system. We conclude on the facts of this case that under RCW 57.08.081(1), the unimproved lots are not properties to which sewer service is available. Accordingly, we hold that the charges at issue are not statutorily authorized and reverse the Court of Appeals.

FACTS
¶ 2 The Holmes Harbor Golf and Yacht Club subdivision, platted in the 1960s on Whidbey Island, contains approximately 500 lots and a golf course. By the late 1970s, individuals had improved only 30 of the lots because the local soils would not support on-site septic systems. Clerk's Papers (CP) at 123-24. The Holmes Harbor Sewer District (District) was formed to provide sewer service to the subdivision.
¶ 3 In 1990, the District formed a utility local improvement district (ULID) to finance the sewer system through bonds and special assessments levied against property within the ULID. The District hired an appraiser to determine the specific benefit each parcel would receive from sewer service, and pursuant *824 to the appraiser's findings, the District charged a special assessment to the property owners. The District constructed sewer lines throughout the subdivision in the right of way adjacent to each lot, with a stub to each property line. The sewer system requires each property to have an on-site septic tank that pumps the wastewater from the individual tanks to the treatment plant for processing.
¶ 4 In June 1995, following completion of the sewer system, the District adopted Resolution 264. CP at 409-19. This resolution governs the use of the system by regulating property connections and locations of on-site sewer facilities. Under this resolution, the District may compel property owners to connect to the sewer when a dwelling or other structure used by humans is situated on any lot within the District and the District gives notice that the property must connect to the system. Property owners are required, at their own expense and in accordance with the District's resolutions, to install on-site facilities on their property before connecting to the sewer system. Before the District approves the connection to the system, property owners must submit a wastewater system hookup application and pay charges and fees, including an application fee, a sewer service connection fee, a system connection charge, delinquent ULID installments, if any, and engineering review and inspection fees. Under this resolution, no guaranteed right to connect to the sewer system is created.[1]
¶ 5 In September 1995, the District adopted Resolution 266, which imposed initial monthly fees of $25 for connected properties and $15 for unconnected properties. CP at 459-61. Subsequent resolutions have raised the rates but have retained the $10 differential. In August 2002, the monthly rates were $58.33 for connected properties and $48.33 for unconnected properties. CP at 523. In 2002, fewer than half of the properties in the subdivision were connected to the sewer system.
¶ 6 Petitioner Holmes Harbor Home Building LLC (Home Building) owns approximately 80 unimproved lots and nine tracts that are subject to the charge. These properties generate no sewage and are not connected to the sewer. Home Building refused to pay the monthly charge imposed on each lot. The District instituted an action to enforce the lien against properties owned by Home Building. Both parties moved for summary judgment, seeking a declaratory judgment on the validity of the charges. The trial court deemed the facts to be essentially undisputed. The court held the charges were authorized by RCW 57.08.081(1) but found they were property taxes under Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 23 P.3d 477 (2001), and thus unconstitutional because they lacked proportionality. The Court of Appeals affirmed the statutory issue but reversed the trial court and concluded the charges were permissible regulatory fees. We granted review to determine the validity of the monthly charges.

ANALYSIS
¶ 7 The parties contend the validity of the charges turns on whether they are permissible regulatory fees or unconstitutional taxes. However, we initially address whether the statute authorizing water-sewer districts to charge rates for sewer service and facilities, RCW 57.08.081(1), allows the District to assess charges on the properties at issue. In construing the application of this statute to the facts of this case, we also examine subsections of RCW 57.08.005 setting forth the general powers of the districts and subsections of RCW 57.08.081 detailing the charges. We adhere to the principle that when we can resolve a case on statutory grounds, we need not, necessarily, reach the constitutional issue. See Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 752, 49 P.3d 867 (2002).

Statutory Authority for Availability Charges
¶ 8 RCW 57.08.081(1) states, in relevant part,
[T]he commissioners of any district shall provide for revenues by fixing rates and *825 charges for furnishing sewer and drainage service and facilities to those to whom service is available ....
(Emphasis added.) To determine whether the District may charge the properties, we look to the text of the statute establishing the District's authority. To impose rates and charges, the language of the statute requires districts to furnish some level of sewer and drainage service and facilities. The next question is when that service furnished by the districts is available.
¶ 9 In 1959, the legislature amended this statute's predecessor by changing the phrase "to those receiving such service" to read "to those to whom such service is available."[2] Laws of 1959, ch. 103, § 11. The Court of Appeals analyzed this amendment when a property owner challenged the validity of sewer service charges on vacant dwellings physically connected to sewer collection and treatment facilities. Lake Stevens Sewer Dist. v. Vill. Homes, Inc., 18 Wash.App. 165, 566 P.2d 1256 (1977). The property owner argued the dwellings were not furnished with sewer service until they were occupied and actual use began. The court properly rejected this argument, recognizing the amendment to the statute makes the availability of the sewer, not actual use, the basis for imposing charges. The court defined availability as commencing when a physical connection is made between the sewer collecting the sewage flow from a parcel of property and the main or trunk sewers of the sewer district. Under this construction, the sewer district could charge properties for furnishing sewer service upon connection to the system, relieving the district from the burden of monitoring when households were actually using the system, as the previous statutory framework seemed to require.
¶ 10 The Court of Appeals returned to the issue of statutory interpretation in Ronald Sewer District v. Brill, 28 Wash.App. 176, 622 P.2d 393 (1980). In Brill, the property owner challenged the validity of sewer service charges imposed on his property that contained only a garage with no water, sewer, or electricity.[3] Though the improved property was not connected to the sewer system, the court concluded that "the legislature intended to expand the class upon whom sewer service fees could be imposed to include property ... which could be, but has not been, connected to district sewer lines." Brill, 28 Wash.App. at 178, 622 P.2d 393. The court relied on the notion that when a statute is amended and a material change is made in the wording, there is a presumption that the legislature intended to change the law. However, the Lake Stevens decision had also recognized this change in the law and found the legislature intended to change the basis for the imposition of charges from actual use to availability. The decisions differ on the appropriate definition of availability.
¶ 11 The Brill decision distinguished Lake Stevens on the grounds that another statute, which authorized sewer district enforcement against property owners, had not yet been revised and expanded to include properties to which service was available. Brill, 28 Wash. App. at 179-80, 622 P.2d 393 (discussing former RCW 56.16.100 (1977)). The statute allowed districts to enforce the collection of sewer connection charges and sewer disposal service charges against property owners to whom the service is available.[4] The Court of Appeals reasoned that the legislature's use of *826 the term "available" suggested a physical connection is not required. However, this amendment does not define availability and does not provide a basis to conclude the legislature intended a more expansive definition of availability. Since the Court of Appeals' interpretations of the availability statute in Lake Stevens and Brill, the legislature has not amended the statute to provide a clear definition of when service furnished by a district becomes available.
¶ 12 RCW 57.08.005, which governs the general powers of a water-sewer district, provides a context for construing the meaning of availability in RCW 57.08.081(1). RCW 57.08.005(10) authorizes districts "to fix rates and charges for water, sewer, and drain service supplied." This subsection gives districts the authority in RCW 57.08.081(1) to generate revenues by fixing rates and charges for service provided. Although this subsection authorizes rates and charges for supplying service, the converse is not necessarily implied that districts can charge when service is not supplied. Unlike the language of RCW 57.08.081(3) (formerly RCW 56.16.100) discussed in Brill, the legislature has not amended this provision to authorize districts to charge for sewer service that is simply available, nor indicated any intent to replace this subsection with any subsection of RCW 57.08.081. We read RCW 57.08.005(10) to require more service than a tentative opportunity to connect. This construction is consistent with the requirement in RCW 57.08.081(1) that some level of service be furnished.
¶ 13 RCW 57.08.081(5) also suggests that rates and charges authorized by RCW 57.08.081(1) require more than an opportunity to connect for service to be available. Under this subsection, districts "may also cut off all or part of the service after charges for water or sewer service supplied or available are delinquent for a period of thirty days." RCW 57.08.081(5). This subsection recognizes that charges may be imposed when sewer service is available but provides the recourse of cutting off the service when charges are not paid. Though districts have the right to foreclose, this power is limited to circumstances where validly imposed fees are not paid. Moreover, the legislature specifically provided that districts have the alternative recourse of cutting off service, but this recourse is against properties to which service is available. A property would have to be connected and using the system to be cut off. This subsection does not support an interpretation of availability that commences when a district assesses the property and places sewer lines in the street because it contemplates that service can be cut off. A district would have nothing to cut off where properties are not connected and have no right to connect.
¶ 14 Though the legislature may not have intended that a physical connection be made for sewer service to be available, the language of RCW 57.08.081(1) requires that some level of service be furnished. The statutory framework governing water-sewer districts also requires more than an uncertain opportunity for an unimproved property to connect to the system, especially in this case where under the resolution the property owners have no right or duty to connect.
¶ 15 In this case, the District considers all property subject to the special assessment in forming the ULID to be property to which sewer service is available. The unimproved properties owned by Home Building, which are not connected to the sewer system, are required to pay monthly charges for some possible benefit of receiving sewer service at some time in the future.[5]
¶ 16 Under the resolution, upon the improvement of the properties, the District may compel property owners to connect to the sewer system; however, property owners have no corresponding right to compel the District to provide sewer service. In contrast to the properties at issue in Brill and Lake Stevens, the properties in this case are unimproved. In this case, the district has taken no action to compel connection, nor do the property owners have a right to connect.
¶ 17 Though the District and property owners expect the District to maintain the *827 sewer system's capacity and to approve connections when properties assessed the special benefit are improved, neither of these events is guaranteed. Before authorizing connection, the District must approve the hookup application, and upon approval by the District, property owners must pay for the installation of on-site facilities and connection to the sewer system. In addition, unforeseen events may operate to reduce the District's ability to serve all assessed properties.
¶ 18 Given that the properties at issue are not improved, are not connected to the sewer system, and have no guaranteed right to connect upon improvement, we find that sewer service is not available to the properties under RCW 57.08.081(1). Accordingly, we find the charges imposed by the District on the properties at issue are not authorized by RCW 57.08.081(1). We reverse the Court of Appeals and remand to the trial court with instructions to grant summary judgment in favor of Home Building.
WE CONCUR: ALEXANDER, C.J., MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, JJ.
NOTES
[1] Section 3.8 of Resolution 264, entitled "Resolution Creates No Right to Connect," provides, "Nothing in this Resolution is intended, nor shall it be construed, to grant to any person or entity any right to connect to the Public Sewer System." CP at 412.
[2] The cases discussed here interpreted the amendment of former RCW 56.16.090 (1991) (repealed by Laws of 1996, ch. 230, § 1702), which contained virtually the same language as RCW 57.08.081(1). The statutes were renumbered in 1996 when the legislature consolidated water and sewer districts into water-sewer districts. RCW 57.02.001 (Laws of 1996, ch. 230, § 101).
[3] The resolution allowed the district to charge property for sewer service availability only when it contained a structure that was "habitable" or "available for human occupancy." The court declined to consider the issue on appeal but remanded to the trial court to determine whether the property met this requirement and thus was subject to assessment within the resolution. Brill, 28 Wash.App. at 180, 622 P.2d 393.
[4] In Brill, the court discussed amendments to former RCW 56.16.100, which the legislature repealed in 1996. Laws of 1996, ch. 230, § 1702. The current statute contains similar language but also authorizes districts to enforce the collection of rates and charges for water service supplied. RCW 57.08.081(3).
[5] These charges are separate from the initial assessment imposed for the special benefit of potentially increased property values resulting from the construction of the sewer system.