[No. 79702-1.    En Banc.]
Argued January 22, 2008.    Decided June 26, 2008.

COMMUNITY TELECABLE OF SEATTLE, INC., ET AL., *Petitioners*, v. THE CITY OF SEATTLE, DEPARTMENT OF EXECUTIVE ADMINISTRATION, *Respondent*.

36

*Randal L. Gainer* and *Dirk J. Giseburt* (of *Davis Wright Tremaine, LLP*), for petitioners.

*Thomas A. Carr, City Attorney*, and *Kent C. Meyer, Assistant*, for respondent.

*Robert L. Mahon III* on behalf of Qwest Corporation, amicus curiae.

*Jon B. Davis* on behalf of Microsoft, Time Warner Cable, Verizon, Earthlink, National Cable & Telecommunications Association, and AOL, LLC, amici curiae.

¶1 STEPHENS, J. — Petitioners Community Telecable of Seattle, Inc.; Comcast of Washington I, Inc.; and Comcast of Washington IV, Inc. (collectively referred to as Comcast) provide high-speed cable Internet service in Seattle. Following an audit, the city of Seattle (City) assessed a telephone utility tax against Comcast for 2001 and 2002. Comcast challenged the tax as violating both state and federal law. The superior court granted summary judgment in Comcast's favor, but Division One of the Court of Appeals reversed and ordered summary judgment in favor of the City. This case requires us to consider whether Comcast may be taxed as a telephone business when providing Internet service. We hold it may not and reverse the Court of Appeals. During the audit period, the City's taxation of Comcast as a telephone business was barred by state law.

I

Background Facts and Procedural History

¶2 Around 1998, Comcast began providing high-speed cable Internet service in Seattle. The service allows sub-

scribers to connect to the Internet at a faster rate than traditional dial-up service, which uses a telephone connection instead of a cable connection. Through its cable Internet service, Comcast provides its subscribers with "access to e-mail over the Internet, access to chat rooms, access to the World Wide Web, [and] access to sites on the Web where Comcast customers can download music and other content." Br. of Resp'ts at 3.

¶3 During the audit period, Comcast's high-speed cable Internet service operated in the following manner:

- A cable inside the subscriber's home connects the subscriber's computer to a cable modem, which is owned or leased by the subscriber. The cable modem converts the digital signal from the subscriber's computer to an electronic signal, which is then transmitted out of the subscriber's home through Comcast's coaxial cable.
- The electronic signal travels through coaxial cable to a fiber node hub located in the subscriber's neighborhood. A fiber node in the hub converts the signal to a fiber optic signal. Comcast owns the hubs.
- The fiber optic signal is forwarded over Comcast's fiber optic cable to Comcast's "head end" in Burien.
- Equipment at the head end performs three important functions: it assigns an Internet Protocol (IP) address to each subscriber's computer, converts the signal back into a digital signal, and converts the data into IP packets that can be sent across the Internet. Comcast owns the head end.
- The IP packets are sent from the head end over fiber optic cables to an Internet Point of Presence (POP) in downtown Seattle. The connection from Comcast's head end to the POP was owned by the At Home Corporation[1] until November 23, 2001, when it was acquired by Comcast's predecessor.
- At the POP, data is routed through a server that sends data onto the Internet across fiber optic cables; the data is

---

[1] The City also refers to the At Home Corporation by the company's trade name, "excite@home."

routed through various servers located outside Washington, sometimes across the globe, as it travels the Internet. The POP server and the various routers, servers and cables beyond the POP server were owned by At Home Corporation until November 23, 2001, when they were purchased by AT&T Corporation.

- Data returns to the subscriber's computer in a reverse order.

A subscriber cannot receive cable Internet service without each of the network components described above.

¶4 In 1995, in anticipation of the arrival of high-speed Internet, the City and Comcast initially agreed that Comcast's Internet service would be taxed at the City's rate for telecommunications services, 6 percent. Nevertheless, when Comcast began providing high-speed Internet services, it paid the City a 10 percent cable television tax on its Internet services. On December 26, 2000, the City instructed Comcast to pay the 6 percent telephone utility tax for its Internet services, rather than the 10 percent cable television tax. For reasons that are not clear from the record, Comcast continued to pay the 10 percent cable television tax until approximately March 2002. On March 15, 2002, the Federal Communications Commission (FCC) issued a declaratory ruling in an unrelated case, explaining that cable Internet service is neither a telecommunications service nor a cable service. At that time, Comcast began paying the City a 0.415 percent service business and occupation (B&O) tax pursuant to former Seattle Municipal Code (SMC) 5.45.050(F) (2001) (now SMC 5.45.050(G)).

¶5 The City audited Comcast's records for the period of January 1, 2001, through December 31, 2002 (the audit period). During the audit period, the City requested documents detailing agreements and revenue sharing between Comcast and At Home Corporation, the company Comcast contracted with to provide some components of Comcast's Internet services. Comcast did not provide all of the requested documentation until after the audit period was over. Sometime prior to the end of the audit period, how-

ever, Comcast verbally advised the City that At Home Corporation received approximately 35 percent of the total cable modem revenues. This was apparently the key piece of information the City sought.

¶6 As a result of the audit, the City concluded that Comcast was not subject to the 10 percent cable television tax for its Internet activities but was subject to the 6 percent telephone utility tax, rather than the 0.415 percent service B&O tax. Accordingly, the City credited Comcast with the 10 percent cable television tax paid during portions of the audit period and imposed the 6 percent telephone utility tax on Comcast's Internet activities during the audit period. Comcast paid the tax and filed a complaint in King County Superior Court, seeking recovery of the assessment above the 0.415 percent tax rate and additional compensation.

¶7 Both parties filed summary judgment motions before the superior court. The court granted Comcast's motion, but the Court of Appeals reversed and granted summary judgment in favor of the City. *Cmty. Telecable of Seattle, Inc. v. City of Seattle*, 136 Wn. App. 169, 149 P.3d 380 (2006). Comcast filed a petition for review, which we granted at 161 Wn.2d 1025 (2007).

II

Analysis

¶8 As a preliminary matter, the City argued below that Comcast is barred from challenging the results of the audit under SMC 5.55.060(D), which prohibits a taxpayer from questioning an assessment in court when the taxpayer refused or failed to make information available to the City. Clerk's Papers (CP) at 9; Appellant's Corrected Opening Br. at 13-15. The City claimed that because Comcast failed to provide requested documentation concerning its relationship with At Home Corporation, Comcast is now forever barred from challenging the audit. In response, Comcast

challenged the constitutionality of SMC 5.55.060(D). Br. of Resp'ts at 24-31. We need not rule on the constitutionality of the provision. SMC 5.55.060(D) does not appear to specify a time frame in which a taxpayer must provide requested information. The record shows that Comcast did at some point provide the City with the information. *See supra* pp. 39-40. The City does not claim to have been prejudiced by the delay. Appellant's Corrected Opening Br. at 14; CP at 831-32. We will avoid deciding constitutional questions where a case may be fairly resolved on other grounds. *Holmes Harbor Sewer Dist. v. Holmes Harbor Home Bldg., LLC*, 155 Wn.2d 858, 862, 123 P.3d 823 (2005). Because we need not consider Comcast's constitutional argument, we also decline to address the City's related defense concerning notice to the attorney general. *See* Appellant's Corrected Opening Br. at 14-15.

¶9 The dispositive issue in this appeal is whether the City may tax Comcast as a telephone business with regard to its cable Internet service. This issue was resolved below on cross-motions for summary judgment, and thus our review is de novo. *See Qwest Corp. v. City of Bellevue*, 161 Wn.2d 353, 358, 166 P.3d 667 (2007).

¶10 A municipal corporation's authority to tax must be delegated by the state legislature. *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 374, 89 P.3d 217 (2004); *see* Matthew Senechal, *Revisiting* Granite Falls: *Why the Seattle Monorail Project Requires Re-examination of Washington's Prohibition on Taxation without Representation*, 29 SEATTLE U. L. REV. 63, 72-73 (2005). Accordingly, we engage in an analysis of the applicable state statutes to determine whether the City's tax during the audit period was permissible.

¶11 In 1997, as high-speed Internet technology was becoming more common, the legislature passed an act entitled "Prohibiting Taxation of Internet Service Providers as Telephone Service Providers," LAWS OF 1997, ch. 304, *codified in part as* RCW 35.21.717:

Until July 1, 2006, a city or town may not impose any new taxes or fees specific to internet service providers. A city or town may tax internet service providers under generally applicable business taxes or fees, at a rate not to exceed the rate applied to a general service classification. For the purposes of this section, "internet service" has the same meaning as in RCW 82.04.297.

Comcast provides Internet service under RCW 82.04.297(3):

"Internet service" . . . includes computer processing applications, provides the user with additional or restructured information, or permits the user to interact with stored information through the internet or a proprietary subscriber network. "Internet service" includes provision of internet electronic mail, access to the internet for information retrieval, and hosting of information for retrieval over the internet or the graphical subnetwork called the world wide web.

¶12 Because Comcast is an Internet service provider, the question then becomes whether it could, during the audit period, be taxed at a rate exceeding the rate applied to a general service classification. We hold that under the plain language of RCW 35.21.717, it could not.

¶13 The City submits that not all of Comcast's Internet service activities fall within RCW 35.21.717. Specifically, it argues Comcast's services include a transmission component that falls under the definition of a "network telephone service," enabling the City to tax Comcast's "transmission activities" at the 6 percent rate applicable to telephone businesses. RCW 82.04.065(2) defines "network telephone service" as follows:

"Network telephone service" means the providing by any person of access to a local telephone network, local telephone network switching service, toll service, or coin telephone services, or the providing of telephonic, video, data, or similar communication or transmission for hire, via a local telephone network, toll line or channel, cable, microwave, or similar communication or transmission system. "Network telephone service" includes the provision of transmission to and from the site of an internet provider via a telephone network, toll line or

channel, cable, microwave, or similar communication or transmission system. "Network telephone service" does not include the providing of competitive telephone service, the providing of cable television service, the providing of broadcast services by radio or television stations, *nor the provision of internet service as defined in RCW 82.04.297, including the reception of dial-in connection, provided at the site of the internet service provider.*

(Emphasis added.)

¶14 Notably, the definition of "telephone business" in the City's municipal code closely mirrors this definition, except that it does not exclude the provision of Internet services. Former SMC 5.30.060(C) (2004). This omission distinguishes the City's definition from other municipal codes, which expressly exclude Internet service from network telephone taxation. TACOMA MUN. CODE 6A.40.030 (excluding "Internet service" as defined in RCW 82.04.297(3) from the definition of "network telephone service"); SPOKANE MUN. CODE 08.10.010(K)(4) (expressly recognizing state moratorium on taxation of Internet service providers as network telephone services).

¶15 The City argues that the first two parts of the "network telephone service" definition encompass Comcast's activities. Appellant's Corrected Opening Br. at 19. Were we to parse the definition and ignore the third part, we might agree. This would fail to respect the legislature's purpose, however. The act in which the relevant provisions of RCW 35.21.717 and RCW 82.04.065 were passed plainly expresses the legislature's intent to prohibit the taxation of Internet service providers as network telephone providers. *See generally* LAWS OF 1997, ch. 304. Moreover, the City's reading of RCW 82.04.065 would render superfluous the last part of its definition excluding Internet services. We will not read a statute in such a way as to render a provision meaningless. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

¶16 The City argues that Comcast is a "network telephone service" because it engages in the provision of data via a cable under RCW 82.04.065(2). But the provision of

data via a cable *is* cable "Internet service" as defined by RCW 82.04.297(3). Likewise, the City argues that Comcast's relationship with At Home Corporation means Comcast's Internet service included the "provision of transmission to and from the site of an internet provider via a . . . cable." RCW 82.04.065(2). Again, the City's argument fails to give effect to all of the language of RCW 82.04.065(2) because it disregards the distinction between "Internet service" and "network telephone service." The transmission component of Internet service cannot be separated from the actual service. CP at 645; Br. of Resp'ts at 20.[2]

¶17 Moreover, the record reflects that Comcast "transforms" and "manipulates" data as it passes through the Comcast network; this manipulation is an integral and necessary part of the provision of Internet services. Br. of Resp'ts at 17; CP at 32-33, 36. Even where Comcast passes on data to another entity, such as At Home Corporation, that passed data would not be useful unless Comcast had transformed the data along the way. Therefore, Comcast is not engaging in the mere "provision of transmission" under RCW 82.04.065(2). Comcast's cable Internet service is plainly excluded from the statutory definition of "network telephone service" under RCW 82.04.065(2).

¶18 We also note that RCW 82.04.065(2) is consistent with the FCC's and the United States Supreme Court's view of high-speed Internet services. "[T]ransmission is a necessary component of Internet access: 'As provided to the end user the telecommunications is part and parcel of cable

---

[2] In its decision, the Court of Appeals relied on Excise Tax Advisory (ETA) Number 2029.04.245, an interpretive statement issued by the Department of Revenue. The Court of Appeals reasoned that the ETA supports its conclusion that Internet service providers may be taxed as network telephone service providers. *Cmty. Telecable*, 136 Wn. App. at 180. This conclusion is in error. The ETA reasoning is predicated on the assumption that the taxpayer at issue provides network telephone service, *not* Internet service. "[The Internet Tax Freedom Act's] expanded definition of Internet access is thought by some taxpayers to include the type of services provided *by* network telephone service businesses *to* [Internet service providers] and their customers." WASH. STATE DEP'T OF REV., *Excise Tax Advisory* No. 2029.04.245, at 1 (Feb. 24, 2006) (emphasis added), *available at* http://dor.wa.gov/docs/rules/eta/2029.pdf. The ETA does not collapse the definitions of "telephone network service" and "Internet service."

modem service.' " *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 988, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) (quoting *In re Inquiry Concerning High-Speed Access to Internet,* 17 F.C.C.R. 4798, 4823, ¶ 39 (2002)). It is appropriate that our state statute, consistent with federal and other state laws, disfavors the kind of artificial division of Internet service components the City advocates. Cable Internet service should mean the same thing inside the Seattle city limits as elsewhere.

¶19 Contrary to the City's contention, our resolution of this case will not lead to absurd results by allowing " 'any telephone business [to] avoid the telephone utility tax simply by offering its customers Internet services such as e-mail and access to the web.' " *Cmty. Telecable,* 136 Wn. App. at 179 (quoting Appellant's Corrected Opening Br. at 20). Under our holding, a telephone business offering Internet services cannot be charged a telephone tax for those services, but may still be charged a telephone tax for providing telephone services—just as Comcast may still be charged a cable television tax for providing cable television. The plain language of RCW 82.04.065(2) means simply that the transmission component of cable Internet services cannot be taxed separately from those very services.

¶20 Because we hold that the City's taxation of Comcast during the audit period was barred by RCW 35.21.717, we need not reach the remaining arguments addressed by the parties, including the application of RCW 35.21.714 or the federal Internet Tax Freedom Act, Pub. L. No. 105-277, 112 Stat. 2681 (1998).[3]

---

[3] Before this court, Comcast moved to admit new evidence it claimed refuted the Court of Appeals interpretation of RCW 35.21.717 and RCW 82.04.065. The motion was passed to the merits. Because we hold that the plain language of those statutes requires reversal of the Court of Appeals, any additional evidence is unnecessary, and we deny Comcast's motion to admit new evidence.

## III

## Conclusion

¶21 As defined in RCW 82.04.065(2), "network telephone service" does not include "cable Internet service." The City violated RCW 35.21.717 when it taxed Comcast's cable Internet service at the 6 percent telephone tax rate. We reverse the Court of Appeals and reinstate the trial court's grant of summary judgment in favor of Comcast.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.