ZACHARY, Judge.
 

 *142
 
 Plaintiffs, owners of undeveloped parcels of property in Defendant Town of Oak Island, challenge the sewer service availability fees levied upon them pursuant to a 2004 local act enacted to help service the debt incurred in constructing Oak Island's sewer system. Plaintiffs argue that
 
 *143
 
 the fees are unauthorized by statute, unconstitutional, and violative of certain tax principles. After careful review, we conclude that Oak Island exceeded its statutory authority by imposing the sewer service availability fees on Plaintiffs' undeveloped property that could not or does not benefit from the availability of Oak Island's sewer system. Accordingly, we reverse the trial court's order granting summary judgment in favor of Oak Island and remand for further proceedings.
 

 I. Background
 

 The Town of Oak Island constructed a sewer system at a cost of $140 million. In
 
 *879
 
 2004, the General Assembly enacted a local act
 
 [1]
 
 designed to assist Oak Island
 
 [2]
 
 in reducing its resultant outstanding debt, which was approximately $117 million as of October 2017.
 
 2004 N.C. Sess. Laws 117
 
 , ch. 96. Specifically, the General Assembly authorized Oak Island to "impose annual fees for the availability of sewer service within" its sewer treatment district.
 
 2004 N.C. Sess. Laws 117
 
 , 117, ch. 96, § 3. The Session Laws authorize Oak Island to impose such sewer service availability fees upon the "owners of each dwelling unit or parcel of property that could or does benefit from the availability of sewage treatment" within the district.
 
 2004 N.C. Sess. Laws 117
 
 , 117, ch. 96, § 4.
 

 Oak Island's sewer lines run in front of each parcel of property on the island, both developed and undeveloped, and, according to Oak Island, its system "has the capacity and ability to serve all parcels, both developed and undeveloped." Oak Island began to assess sewer service availability fees against all properties within the district, both developed and undeveloped.
 

 Beginning in fiscal year 2009,
 
 [3]
 
 owners of developed property began paying the availability fees via an additional charge reflected on their monthly sewer bills. Owners of undeveloped parcels began paying the availability fees on an annual basis in fiscal year 2010, with the fees appearing on their property tax bills. The total sewer service availability fees charged to each parcel thus far are as follows:
 
*144 Fiscal Year Developed Undeveloped 2010 $733.26 $146.15 2011 $435.46 $146.15 2012 $324.63 $139.13 2013 $490.81 $576.00 2014 $657.61 $643.68 2015 $714.78 $719.31 2016 $559.74 $803.83 2017 $562.28 $803.83

 These recurring sewer service availability fees are in addition to a one-time special assessment of $4,200.00, which was imposed upon all parcels of property at the outset of the sewer system's establishment. It is also noteworthy that for the years 2015 through 2017, owners of undeveloped lots were paying more than the owners of developed lots that were connected to and using the sewer system.
 

 On 11 December 2015, Plaintiffs filed the instant action challenging Oak Island's statutory authority to assess the sewer service availability fees against Plaintiffs' undeveloped property. Plaintiffs sought to recover the fees paid from 2010 to 2014, and interest, together with a declaratory judgment that the fees are unlawful. On 21 April 2017, Plaintiffs moved to certify a class of all undeveloped parcel owners who have paid the sewer service availability fees since 2009.
 

 The parties filed cross-motions for summary judgment in October 2017. Plaintiffs moved for summary judgment on the issue of liability only, while Oak Island moved for summary judgment on all issues. A hearing on the parties' summary judgment motions was held on 16 April 2018. At the outset of the hearing, Plaintiffs voluntarily dismissed their claim for declaratory judgment without prejudice, leaving only their claim for the recovery of fees paid from 2010 to 2014. At
 
 *880
 
 the end of the hearing, Plaintiffs orally moved to amend the pleadings pursuant to Rule 15(b) of the North Carolina Rules of Civil Procedure, or alternatively, to supplement their complaint pursuant to Rule 15(d), in order to bring claims for recovery of sewer service availability fees paid in fiscal years 2015 through 2017. Oak Island objected to the motion.
 

 Without ruling on Plaintiffs' motion to amend, the trial court denied Plaintiffs' motion for partial summary judgment and granted Oak Island's motion for summary judgment. In light of these rulings, the trial court
 
 *145
 
 also did not rule upon Plaintiffs' motion for class certification. On 2 May 2018, the trial court entered an order memorializing its decision and taxing the costs against Plaintiffs. Plaintiffs filed notice of appeal to this Court on 21 May 2018.
 

 On appeal, Plaintiffs contend that the trial court erred by granting Oak Island's motion for summary judgment because (1) the statutory phrase "availability of sewer service" precludes Oak Island from assessing sewer service availability fees against undeveloped properties; (2) Oak Island provided a full credit or rebate of the availability fees to owners of developed parcels, thereby violating Plaintiffs' constitutional rights and certain tax principles; and (3) refunds were provided to owners of developed parcels in violation of
 
 N.C. Gen. Stat. § 105-380
 
 (a). Finally, Plaintiffs argue that the trial court erred in failing to grant their motion to amend the pleadings.
 

 II. Discussion
 

 a. Standard of Review
 

 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). Our standard of review on appeal from an order granting summary judgment is
 
 de novo
 
 .
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008).
 

 b. Statutory Authority to Assess Sewer Service Availability Fees
 

 We first address Plaintiffs' argument that the trial court erred in granting summary judgment in favor of Oak Island because Oak Island exceeded its statutory authority under the Session Laws by assessing the sewer service availability fees against Plaintiffs' undeveloped properties. Specifically, Plaintiffs argue that their undeveloped properties are not ones that "could or do[ ] benefit from the availability" of Oak Island's sewage treatment services. We agree, and therefore reverse the trial court's order granting summary judgment in favor of Oak Island on this ground.
 

 "As creations of the legislature, municipalities have only those powers delegated to them by the General Assembly."
 
 Quality Built Homes, Inc. v. Town of Carthage
 
 ,
 
 369 N.C. 15
 
 , 16,
 
 789 S.E.2d 454
 
 , 455 (2016). "The General Assembly delegates express power to municipalities by adopting an enabling statute, which includes implied powers essential to the exercise of those which are expressly conferred."
 

 *146
 

 Id.
 
 at 19,
 
 789 S.E.2d at 457
 
 (quotation marks and alteration omitted). Otherwise, "[a]ll acts beyond the scope of the powers granted to a municipality are invalid."
 

 Id.
 

 "When determining the extent of legislative power conferred upon a municipality, the plain language of the enabling statute governs."
 

 Id.
 

 "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required."
 
 Diaz v. Div. of Soc. Servs.
 
 ,
 
 360 N.C. 384
 
 , 387,
 
 628 S.E.2d 1
 
 , 3 (2006) (citation omitted).
 

 In the instant case, although the Session Laws do not define the term "availability" for purposes of imposing the sewer service availability fees, it is clear that the enabling Session Laws do not, as a matter of law, apply to Plaintiffs' undeveloped property.
 

 *881
 
 "In the event that the General Assembly uses an unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning."
 
 Fid. Bank v. N.C. Dep't of Revenue
 
 ,
 
 370 N.C. 10
 
 , 19,
 
 803 S.E.2d 142
 
 , 149 (2017). The plain meaning of the unambiguous, undefined word "availability" is "the quality or state of being available."
 
 Availability
 
 , MERRIAM-WEBSTER.COM , https://www.merriam-webster.com/dictionary/availability (last visited May 31, 2019). "Available" means "present or ready for immediate use."
 
 Available
 
 , MERRIAM-WEBSTER.COM , https://www.merriam-webster.com/dictionary/available (last visited May 31, 2019).
 

 As noted in Oak Island's answer to Plaintiffs' first set of interrogatories, in order to "benefit from the availability" of Oak Island's sewer system, the owner of an undeveloped parcel of property would first be required to (1) obtain the requisite building permits; (2) construct a dwelling or building with a sewer system connection on the property; (3) have the improvements pass municipal inspection; (4) obtain a plumbing permit; (5) submit an application for service; and (6) meet any additional requirements governing the improvement of property set forth in the Town of Oak Island Code of Ordinances. Should the system have the capacity to add and serve the parcel, an owner of undeveloped property who wished to connect to the system would also have to pay the requisite fees to Oak Island in order to obtain the various permits. The complex, costly additional requirements-many of them conditional-that the owner of an undeveloped lot must fulfill in order to benefit from Oak Island's sewer services foreclose any conclusion that such services are "present or ready for immediate use" by those owners.
 

 *147
 
 Our conclusion is supported by
 
 Ricks v. Town of Selma
 
 ,
 
 99 N.C. App. 82
 
 ,
 
 392 S.E.2d 437
 
 (1990),
 
 disc. review improvidently allowed
 
 ,
 
 328 N.C. 567
 
 ,
 
 402 S.E.2d 400
 
 (1991), in which this Court addressed the validity of an availability charge in the context of water and sewer treatment services. At issue in
 
 Ricks
 
 was the validity of the defendant Town of Selma's ordinance that set "rates for ... sewer service available but not received[.]"
 
 99 N.C. App. at 84
 
 ,
 
 392 S.E.2d at 438
 
 . The plaintiffs were the owners of a 41-unit mobile-home park located inside the Town's limits, which utilized its own private septic tanks instead of the Town's sewer system.
 
 Id.
 
 at 83,
 
 392 S.E.2d at 438
 
 . The Town assessed availability charges against the plaintiffs, who contended that the Town had exceeded the scope of its statutory authority, in that the plaintiffs were not using the Town's services.
 
 Id.
 
 at 84,
 
 392 S.E.2d at 438-39
 
 . We disagreed.
 

 The authorizing statute in
 
 Ricks
 
 permitted the Town to enact an ordinance "establish[ing] rates for the use of or the services furnished by any public enterprise."
 
 Id.
 
 at 84-85,
 
 392 S.E.2d at 439
 
 (quotation marks omitted) (citing N.C. Gen. Stat. § 160A-314(a) ). The question presented thus was "whether making sewer service available is 'furnishing a service' within the meaning of the statute."
 
 Id.
 
 at 85,
 
 392 S.E.2d at 439
 
 . We held that the Town's ordinance was statutorily authorized as against the plaintiffs, concluding that "a city's power to set rates for services furnished by a sewer system includes the power to charge for services available but not received," where the property is developed, but the owner chooses not to connect.
 
 Id.
 
 at 86,
 
 392 S.E.2d at 440
 
 .
 

 While the term "available" was not explicitly defined in
 
 Ricks
 
 or the relevant statute, the facts that were held to evidence "availability of service" are clearly distinguishable from those of the case at bar. In
 
 Ricks
 
 , the Town had extended water and sewer service to the plaintiffs' mobile home park; the plaintiffs
 
 chose
 
 to "tap[ ] onto the municipal water service, but ... never connected any of their 41 housing units to the ... sewer system[,]" preferring instead to use their existing septic tanks.
 
 Id.
 
 at 83,
 
 392 S.E.2d at 438
 
 . In other words, the Town's sewer services were
 
 present and ready for immediate use
 
 by the
 
 Ricks
 
 plaintiffs, who simply opted not to connect to the system. Moreover, unlike the undeveloped property in the present case, the plaintiffs' property in
 
 Ricks
 
 was already developed and generating sewage, and the
 
 *882
 
 Town had authorized the units' connection to the system.
 

 Our holding finds further support in the circumstances under which property may be subject to an "availability charge" pursuant to N.C. Gen. Stat. § 160A-317, which governs a municipality's authority
 
 *148
 
 to require property owners to connect to its sewer facilities and to charge for such connections. Specifically, the statute authorizes municipalities to "require an owner of
 
 developed property on which there are situated one or more residential dwelling units or commercial establishments
 
 ... to connect the owner's premises with the [city's] ... sewer line." N.C. Gen. Stat. § 160A-317(a) (emphasis added). Alternatively, municipalities may subject such owners to "a periodic availability charge" in lieu of connection.
 

 Id.
 

 The Session Laws' language "could ... benefit from the availability of sewage treatment" follows the same logic of section 160A-317.
 
 2004 N.C. Sess. Laws 117
 
 , 117, ch. 96, § 4. The fact that it would be outside the scope of Oak Island's authority under N.C. Gen. Stat. § 160A-317 to charge Plaintiffs an "availability charge" for its sewer services suggests that those services are similarly not "available" to Plaintiffs for purposes of the Session Laws.
 
 See, e.g.
 
 ,
 
 In re Halifax Paper Co.
 
 ,
 
 259 N.C. 589
 
 , 594,
 
 131 S.E.2d 441
 
 , 445 (1963) ("[I]t is the duty of the courts to reconcile laws and adopt the construction of a statute which harmonizes it with other statutory provisions.").
 

 Also instructive, though lacking precedential value, is
 
 Holmes Harbor Sewer Dist. v. Holmes Harbor Home Bldg. LLC
 
 ,
 
 155 Wash.2d 858
 
 ,
 
 123 P.3d 823
 
 (2005), in which the Washington Supreme Court directly addressed the meaning of "availability" of sewer services.
 
 123 P.3d at 825-26
 
 . Similar to the statutory scheme at issue in this case, the Washington statute permitted the district to "fix[ ] rates and charges for furnishing sewer and drainage service and facilities to those to whom
 
 service is available
 
 ."
 

 Id.
 

 at 824-25
 
 . The Washington Supreme Court held in favor of an owner of unimproved property who had refused to pay the availability charges.
 

 Id.
 

 at 827
 
 . Specifically, the Court concluded that "unimproved lots are not properties to which sewer service is available," and therefore, "the charges at issue [we]re not statutorily authorized."
 
 [4]
 

 Id.
 

 at 823
 
 .
 

 *149
 
 As Oak Island did, the sewer district in
 
 Holmes Harbor
 
 initially charged a special assessment to all property owners of both improved and unimproved parcels and later imposed additional availability charges. The availability charges were assessed against unimproved properties, unconnected to the system and generating no sewage, as well as those developed, connected, and actually receiving services. Moreover, as here, owners of unimproved property had "no guaranteed right to connect to the sewer system."
 

 Id.
 

 at 824
 
 . Should there be sufficient capacity, the Washington sewer district reserved the right to authorize any new connections. However, "[b]efore authorizing connection, the [d]istrict [had to] approve the hookup application, and upon approval by the [d]istrict, property owners [then had to] pay for the installation of on-site facilities and connection to the sewer system."
 

 Id.
 

 at 827
 
 . Finding that the initial assessment had compensated the district for "the special benefit of potentially increased property values resulting from the
 
 *883
 
 construction of the sewer system,"
 

 id.
 

 at 826 n.5, the Court concluded that justifying the availability charges would require more than a nebulous opportunity to connect to the system at some undetermined future date.
 
 See
 

 id.
 

 at 826-27
 
 . Accordingly, the Court held that sewer service was not available where "the properties at issue are not improved, are not connected to the sewer system, and have no guaranteed right to connect upon improvement."
 

 Id.
 

 at 827
 
 .
 

 Similarly here, Plaintiffs' undeveloped properties are not ones that "
 
 could or do[ ] benefit from the availability
 
 of" Oak Island's sewer treatment services.
 
 2004 N.C. Sess. Laws 117
 
 , 117, ch. 96, § 4 (emphasis added). The undeveloped properties are not connected to or being served by the municipal sewer service, and "have no guaranteed right to connect."
 
 Holmes Harbor
 
 ,
 
 123 P.3d at 827
 
 . Thus, the sewer service is not available to the owners of such properties. Consequently, beyond the initial assessment imposed, Oak Island's additional and ongoing charges to Plaintiffs, as owners of undeveloped properties, for sewer service availability was not a valid exercise of statutory authority pursuant to Session Law 2004-96.
 

 In light of our decision, we do not address Plaintiffs' additional arguments concerning the tax credit provided to developed property owners and not to undeveloped property owners.
 

 c. Motions to Amend Pleadings
 

 Finally, Plaintiffs argue that the trial court erred by failing to grant their oral motions to amend or supplement their complaint pursuant to Rule 15(b) and (d) of the North Carolina Rules of Civil Procedure.
 

 *150
 
 However, because Plaintiffs failed to obtain rulings on these motions, there is no judicial action for this Court to review at this time.
 

 "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely ... motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1). "It is also necessary for the complaining party to obtain a ruling upon the party's ... motion."
 

 Id.
 

 At the outset of the hearing, Plaintiffs took a voluntary dismissal of their declaratory judgment claim. At that point, Defendant noted that "[s]ince the damages requested are only from 2010 to 2014, now there's no request for beyond 2015." At the end of the hearing, Plaintiffs moved to amend their complaint, pursuant to Rule 15(b), to include damages for sewer service availability fees paid during fiscal years 2015 through 2017. Plaintiffs argued that damages for these years had been tried by consent because Oak Island's Exhibit D included sewer service availability fees charged to landowners for fiscal years 2010 through 2017. In the alternative, Plaintiffs argued that they should be allowed to supplement their complaint pursuant to Rule 15(d). Oak Island objected to Plaintiffs' motion to amend their complaint, arguing that it did not try the issue of damages in those years by consent.
 
 [5]
 

 After the hearing, the trial court announced its decision to deny Plaintiffs' motion for partial summary judgment and grant Oak Island's motion for summary judgment. However, the trial court did not decide or rule upon Plaintiffs' Rule 15 motions. Because Plaintiffs did not obtain rulings upon their Rule 15 motions, they failed to preserve for appeal any arguments concerning the same.
 
 See
 
 id.
 

 ;
 
 Gilreath v. N.C. Dep't of Health & Human Servs.
 
 ,
 
 177 N.C. App. 499
 
 , 501,
 
 629 S.E.2d 293
 
 , 294 (holding that the plaintiff's argument that the trial court erred in failing to grant the plaintiff's motion to strike paragraphs from affidavits was unpreserved because the plaintiff did not obtain a ruling on that motion),
 
 aff'd per curiam
 
 ,
 
 *884
 

 361 N.C. 109
 
 ,
 
 637 S.E.2d 537
 
 (2006). These arguments are not before us at this time.
 
 *151
 

 III. Conclusion
 

 The trial court's order granting summary judgment in favor of Oak Island is reversed and remanded.
 

 REVERSED AND REMANDED.
 

 Judge TYSON concurs.
 

 Judge COLLINS concurs in part and dissents in part by separate opinion.
 

 COLLINS, Judge, concurs in parts and dissents in part.
 

 Plaintiffs, owners of undeveloped parcels of property in the Town of Oak Island, challenge fees levied upon them by Defendant Town of Oak Island for payment of sewer system debt service, pursuant to a 1996 session law. Plaintiffs argue the fees are unauthorized by statute, unconstitutional, and violative of certain tax principles, and seek declaratory judgment and recovery of the fees. Because I conclude Plaintiffs' arguments lack merit, I would affirm the trial court's order granting summary judgment in favor of Defendant Town of Oak Island. I therefore respectfully dissent. However, I concur with the majority that Plaintiffs failed to preserve for our appellate review any issue regarding their oral motions to amend or supplement their complaint.
 

 I. Procedural History
 

 By Complaint filed 11 December 2015 and Amended Complaint filed 15 January 2016 (collectively Complaint), Plaintiffs, owners of undeveloped parcels of property in the Defendant Town of Oak Island (Town or Oak Island), challenged sewer district fees (Fee or Fees) Oak Island was collecting to pay debt service on its sewer system. Plaintiffs sought to recover Fees paid from 2010 to 2014, and declaratory judgment that the Fees are unlawful. Oak Island answered the Complaint, denied its material allegations, and moved to dismiss the Complaint. On 21 April 2017, Plaintiffs moved to certify a class of all undeveloped parcel owners who have paid Fees since 2009.
 

 In October 2017, the parties filed cross-motions for summary judgment. Plaintiffs moved for summary judgment on the issues of liability only while Oak Island moved for summary judgment on all issues.
 

 A hearing on the parties' summary judgment motions was held on 16 April 2018. At the outset of the hearing, Plaintiffs took a voluntary
 
 *152
 
 dismissal without prejudice of their prayer for declaratory judgment, leaving only their claim for the recovery of Fees paid from 2010 to 2014.
 

 At the end of the hearing, Plaintiffs orally moved to amend the pleadings under North Carolina Rules of Civil Procedure 15(b) and to supplement the complaint under N.C. R. Civ. P. 15(d) to bring claims for recovery of Fees paid in 2015, 2016, and 2017. Oak Island objected to the motion. Without ruling on Plaintiffs' motion to amend the pleadings, the trial court denied Plaintiffs' motion for partial summary judgment and granted Oak Island's motion for summary judgment. In light of these rulings, the trial court did not consider Plaintiffs' class certification motion. On 2 May 2018, the trial court entered an Order reflecting its ruling and taxing costs against Plaintiffs. Plaintiffs filed Notice of Appeal to this Court on 21 May 2018.
 

 II. Factual Background
 

 Oak Island constructed a sewer system at a cost of $140 million. As of October 2017, the principal amount of indebtedness for the system was approximately $117 million. Sewer lines run in front of each parcel of property on Oak Island, both developed and undeveloped, and the sewer system has the capacity and ability to serve all parcels of property on Oak Island.
 

 Starting in 2004, the General Assembly adopted legislation to assist Oak Island and two other towns in amortizing their sewer system debt. Specifically, the General Assembly enacted three Session Laws authorizing the towns to create fee-supported sewer treatment districts and impose sewer district
 
 *885
 
 fees to pay the debt service on their sewer systems. A 2004 session law applied to Holden Beach.
 
 See
 
 2004 N.C. Sess. Law 96 (2004). A 2006 session law added Oak Island to the sewer district fee authority previously granted to Holden Beach.
 
 See
 
 2006 N.C. Sess. Law 54 (2006). A 2010 session law broadened the authority granted to include Caswell Beach.
 
 See
 
 2010 N.C. Sess. Law 29 (2010).
 

 The relevant portions of the 2006 session law applicable to Oak Island (Session Law) provide:
 

 SECTION 1. Fee-Supported District. - A municipality may create a fee-supported sewer treatment district for all properties that are or can be served by the sewage collection and treatment plant serving properties within the Town.
 

 ....
 

 *153
 
 SECTION 3. Imposition of Annual Fees. - The Town may impose annual fees for the availability of sewer service within the district. The Board shall set same on or before July 1 each year.
 

 SECTION 4. Fees. - The fees imposed by the municipality may not exceed the cost of providing the sewer collection facility within the municipality and the cost of the contract with a county to provide it with the facilities to transport, treat, and dispose of the municipality's effluent. Said fees shall be imposed on owners of each dwelling unit or parcel of property that could or does benefit from the availability of sewage treatment.
 

 SECTION 5. Billing of Fees. - The municipality may include a fee imposed under this section on the property tax bill for each parcel of property lying within the municipal limits on which the fee is imposed. Said fee shall be collected in the same manner as provided for in the General Statutes for the collection of ad valorem taxes, and remedies available by statute for the collection of taxes shall apply to the collection of the sewer district fees.
 

 SECTION 6. Use of Fees. - The Town shall credit the fees collected within the district to a separate fund to be used only to pay the debt service for the sewer system. ...
 

 S.L. 2006-54 (amending S.L. 2004-96).
 
 [6]
 

 Debt service on Oak Island's sewer system is paid from (1) assessments paid by all parcel owners, (2) monthly fees paid by developed parcel owners currently using the system, and (3) yearly fees paid by undeveloped parcel owners. Starting in fiscal year 2009,
 
 [7]
 
 owners of developed parcels began paying debt service fees via a monthly charge for basic sewer service, covering debt service and operating costs, along with a usage charge for service over 4,000 gallons per month. In fiscal year 2010, owners of undeveloped parcels began paying sewer district Fees once a year, with the Fee appearing on their yearly property tax bill.
 

 *154
 
 Even though owners of developed parcels pay debt service fees on a monthly basis, a yearly sewer district Fee also appears on their annual property tax bill. This Fee is credited back on the same annual property tax bill such that owners of developed parcels are not double-billed for debt service payments. By collecting debt service fees from developed parcel owners monthly, Oak Island pays down the sewer system debt faster than if it collected the sewer district Fees on a yearly basis.
 

 The debt service payments paid by each type of parcel during the years at issue
 
 [8]
 
 are as follows:
 
*886 Fiscal Year Developed Undeveloped 2010 $733.26 $146.15 2011 $435.46 $146.15 2012 $324.63 $139.13 2013 $490.81 $576.00 2014 $657.61 $643.68

 III. Issues
 

 On appeal, Plaintiffs assert the trial court erred by (1) failing to grant Plaintiffs' motion to amend their Complaint; (2) failing to grant Plaintiffs' motion to supplement their Complaint; (3) granting Defendant's motion for summary judgment because the term "availability of sewer service" in the Session Law cannot be harmonized with N.C. Gen. Stat. § 160A-317(a) ; (4) granting Defendant's motion for summary judgment because Defendant provided a full credit or rebate of the sewer district fee to owners of developed parcels, thereby violating Plaintiffs' constitutional rights and certain tax principles; and (5) granting Defendant's motion for summary judgment because refunds were provided to owners of developed parcels in violation of
 
 N.C. Gen. Stat. § 105-380
 
 (a).
 

 IV. Standard of Review
 

 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that
 
 *155
 
 any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2018). Our standard of review of an appeal from an order granting summary judgment is
 
 de novo
 
 .
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008). Moreover, appellate review of constitutional challenges is
 
 de novo
 
 .
 
 See generally
 

 Hart v. State
 
 ,
 
 368 N.C. 122
 
 , 130,
 
 774 S.E.2d 281
 
 , 287 (2015).
 

 V. Discussion
 

 A. Motions to Amend or Supplement Complaint
 

 Because Plaintiffs failed to obtain rulings on their oral motions to amend their complaint under Rule 15(b) or supplement their complaint under Rule 15(d) of the Rules of Civil Procedure to bring claims for recovery of Fees paid in 2015, 2016, and 2017, I agree with the majority that these arguments are not preserved for our appellate review.
 
 See
 
 N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review ... [i]t is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.");
 
 Gilreath v. N.C. Dep't of Health & Human Servs.
 
 ,
 
 177 N.C. App. 499
 
 , 501,
 
 629 S.E.2d 293
 
 , 294 (2006) (holding plaintiff failed to preserve an argument that the trial court erred in failing to grant plaintiff's motion to strike paragraphs from affidavits because plaintiff failed to obtain a ruling on the motion).
 

 Therefore, the only issue before this court is Plaintiffs' complaint for recovery of Fees paid during the years 2010-14.
 

 B. Statutory Authority to Assess Sewer District Fees
 

 Plaintiffs advance several arguments as to why Oak Island lacked the statutory authority to impose the Fees upon owners of undeveloped parcels. I address and reject each argument.
 

 Meaning of the term "availability of service"
 

 The Session Law authorizes Oak Island to "create a fee-supported sewer treatment district for all properties that are or can be served by the sewage collection and treatment plant serving properties within the Town." S.L. 2006-54 § 1. Annual fees may be imposed "for the availability of sewer service within the district." S.L. 2006-54 § 3. "Said fees shall be imposed on owners of each
 
 *887
 
 dwelling unit or parcel of property that could or does benefit from the availability of sewage treatment." S.L. 2006-54 § 4. Plaintiffs argue that the term "availability of sewer service" does not relate to owners whose parcels are undeveloped in that "service is not available" to them because they must take additional steps to connect to the sewer system. Plaintiffs misconstrue the plain language of the Session Law.
 
 *156
 
 "The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent."
 
 Burgess v. Your House of Raleigh, Inc.
 
 ,
 
 326 N.C. 205
 
 , 209,
 
 388 S.E.2d 134
 
 , 137 (1990) (citation omitted). "The best indicia of that intent are the language of the statute ... , the spirit of the act[,] and what the act seeks to accomplish."
 
 Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs
 
 ,
 
 299 N.C. 620
 
 , 629,
 
 265 S.E.2d 379
 
 , 385 (1980) (citations omitted). Thus, "[i]n resolving issues of statutory construction, we look first to the language of the statute itself."
 
 Walker v. Bd. of Tr. of the N.C. Local Gov't. Emp. Ret. Sys.
 
 ,
 
 348 N.C. 63
 
 , 65,
 
 499 S.E.2d 429
 
 , 430 (1998) (quotation marks and citation omitted). "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required."
 
 Diaz v. Div. of Soc. Servs.
 
 ,
 
 360 N.C. 384
 
 , 387,
 
 628 S.E.2d 1
 
 , 3 (2006) (citation omitted).
 

 While the Session Law does not define the term "availability," the ordinary meaning of "availability" is the state of being "present or ready for immediate use[.]"
 
 Availability
 
 ,
 
 Merriam-Webster Dictionary
 
 , https://www.merriam-webster.com/dictionary/availability (last visited April 16, 2019);
 
 see
 

 Fid. Bank v. N.C. Dep't of Revenue
 
 ,
 
 370 N.C. 10
 
 , 19,
 
 803 S.E.2d 142
 
 , 149 (2017) ("In the event that the General Assembly uses an unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning."). The Session Law authorizes the imposition of fees "for the availability of sewer service
 
 within the district
 
 ." S.L. 2006-54 § 3 (emphasis added). The district is comprised of "all properties that
 
 are or can be served
 
 by the sewage collection and treatment plant serving properties within the Town." S.L. 2006-54 § 1 (emphasis added). Thus, the Session Law authorizes Oak Island to impose fees for the sewer service's presence or readiness for use by all properties that are or can be served by the Town's sewage collection and treatment plant.
 

 Oak Island's Chief Financial Officer, David Hatten, stated in his uncontradicted affidavit that Oak Island installed a sewer system and that "[s]ewer lines run in front of each parcel on Oak Island, both developed and undeveloped. Oak Island's sewer system has the capacity and ability to serve all parcels both developed and undeveloped." These undisputed averments compel the conclusion that the sewer service is present or ready for immediate use by all properties that are or can be served by the Town's sewage collection and treatment plant, including undeveloped parcels of property. Plaintiffs' parcels, while not presently served by the Town's sewage collection and treatment plant, "can be
 
 *157
 
 served" by the Town's sewage collection and treatment plant when they are connected to the sewer lines in the future.
 

 Moreover, the Session Law contemplates the levying of fees upon owners of undeveloped parcels of property that indirectly benefit from the sewer system but are not currently connected to the system, and that could directly benefit from the system upon connection. Furthermore, as explained at oral argument, parcels which can never be developed - and thus can never be served by the sewage collection and treatment plant - can be exempted from paying Fees.
 

 Plaintiffs propose construing the statute to require that a parcel be developed and presently able to connect to the sewer system before Fees can be imposed. Plaintiffs' interpretation would require terms be added to the Session Law, while rendering the terms "can be served [,]" "within the district[,]" and "parcel of property that could ... benefit" superfluous. Such statutory construction is not permitted, because "[i]n effectuating legislative
 
 *888
 
 intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used."
 
 Lunsford v. Mills
 
 ,
 
 367 N.C. 618
 
 , 623,
 
 766 S.E.2d 297
 
 , 301 (2014) (internal citations and quotation marks omitted). We construe each word of a statute to have meaning, where reasonable and consistent with the entire statute, because "it is always presumed that the legislature acted with care and deliberation ...."
 
 Batts v. Batts
 
 ,
 
 160 N.C. App. 554
 
 , 557,
 
 586 S.E.2d 550
 
 , 553 (2003) (quotation marks and citation omitted).
 

 As the plain language of the Session Law authorizes Oak Island to impose Fees upon all owners of developed and undeveloped parcels of property within the Town of Oak Island's fee-supported sewer district as a result of sewer service being available within the district, Oak Island was authorized to impose Fees upon Plaintiffs.
 

 This conclusion comports with
 
 Ricks v. Town of Selma
 
 ,
 
 99 N.C. App. 82
 
 ,
 
 392 S.E.2d 437
 
 (1990), wherein this Court concluded that a town could "set an availability charge for water or sewer service available but not received."
 
 Id
 
 . at 84,
 
 392 S.E.2d at 438-39
 
 . The town had the statutory authority to establish rates " 'for the use of or the services furnished by any public enterprise.' "
 
 Id.
 
 at 84-85,
 
 392 S.E.2d at 439
 
 (quoting N.C. Gen. Stat. § 160A-311(2) ). " 'Public enterprise' " included " '[s]ewage collection.' "
 

 Id.
 

 (quoting N.C. Gen. Stat. § 160A-311(3) ). The question was "whether making sewer service available is 'furnishing a service' within the meaning of the statute[.]"
 
 Ricks
 
 ,
 
 99 N.C. App. at 85
 
 ,
 
 392 S.E.2d at 439
 
 .
 

 *158
 
 The town had extended water and sewer service to plaintiffs' property and, thus, "[b]oth water and sewer service from the Town of Selma were available to plaintiffs' property."
 
 Id.
 
 at 83,
 
 392 S.E.2d at 438
 
 . Plaintiffs did not tap into the municipal sewer system, choosing instead to continue to use their private septic tank. This Court concluded that by making sewer service available, i.e., extending the sewer service to the property, the city had furnished a service, thus authorizing it to set a rate for this service.
 
 Id.
 
 at 85,
 
 392 S.E.2d at 439
 
 .
 

 Just as the Town of Selma extended sewer service to plaintiffs' property in
 
 Ricks
 
 , Oak Island has extended sewer service to all parcels on Oak Island, including Plaintiffs' properties. Thus, as in
 
 Ricks
 
 , sewer service was available to all parcels in Oak Island, including Plaintiffs' parcels. Moreover, unlike in
 
 Ricks
 
 where the Court was interpreting the scope of the rate-setting authority of a broadly applicable statute, in this case, the narrowly applicable Session Law specifically granted Oak Island the authority to impose Fees upon Plaintiffs' as owners of parcels of property that can be served by the Town's sewage collection and treatment plant and that could benefit from the availability of sewage treatment. S.L. 2006-54 §§ 1, 4.
 

 Plaintiffs rely heavily upon
 
 Holmes Harbor Sewer Dist. v. Holmes Harbor Home Bldg. LLC
 
 ,
 
 155 Wash.2d 858
 
 ,
 
 123 P.3d 823
 
 (2005), wherein the court concluded that a statute authorizing water-sewer districts to charge rates for sewer service and facilities did not allow a district to assess monthly fees on undeveloped properties.
 

 Id.
 

 at 827
 
 . Such reliance is misplaced.
 

 The statute at issue allowed a district to " 'fix[ ] rates and charges for furnishing sewer and drainage service and facilities to those
 
 to whom
 
 service is available ....' "
 

 Id.
 

 at 824-25
 
 (quoting RCW 57.08.081(1) ) (emphasis added). The court concluded that the text of the statute required "districts to furnish some level of sewer and drainage service" to an individual in order to impose rates and charges.
 
 Holmes
 
 ,
 
 123 P.3d at 825
 
 . The court then analyzed the statutory framework governing the general powers of water-sewer districts as well as the district's resolution governing the use of the system which provided, "Nothing in this Resolution is intended, nor shall it be construed, to grant to any person or entity any right to connect to the Public Sewer System" to determine to whom service was available.
 

 Id.
 

 at 824
 
 .
 

 In holding that RCW 57.08.081(1) did not give the district the authority to assess
 
 *889
 
 monthly fees against undeveloped properties, the court reasoned,
 

 *159
 
 [t]hough the legislature may not have intended that a physical connection be made for sewer service to be available, the language of RCW 57.08.081(1) requires that some level of service be furnished. The statutory framework governing water-sewer districts also requires more than an uncertain opportunity for an unimproved property to connect to the system, especially in this case where under the resolution the property owners have no right or duty to connect.
 

 Id.
 

 at 826
 
 .
 

 Holmes Harbor
 
 is not binding on this Court and is nonetheless distinguishable from the present case. Unlike the plain language of the statute in
 
 Holmes Harbor
 
 , which only authorized charges to be assessed against individuals to whom sewer service was being furnished, the plain language of the Session Law in this case authorizes Fees to be imposed for the general availability of sewer service within the district, and specifically authorizes the district to include parcels of property that are not presently served by the Town's sewage collection and treatment plant, but could be.
 

 Moreover, while the State of Washington's statutory framework informed the court's interpretation of "
 
 to whom
 
 service is available" and, thus, when an individual could be charged for sewer service, this Court need not engage in statutory interpretation of the Session Law's language, as it plainly authorizes Oak Island to impose Fees upon all owners of developed and undeveloped parcels of property within the Town's fee-supported sewer district as a result of sewer service being available within the district.
 
 See
 

 Lunsford v. Mills
 
 ,
 
 367 N.C. 618
 
 , 623,
 
 766 S.E.2d 297
 
 , 301 (2014) ("If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms.").
 

 Furthermore, while opinions from other jurisdictions interpreting forms of the word "available" in light of their own statutory schemes and case law may be instructive,
 
 see, i.e.
 
 ,
 
 Durango W. Metro. D. No. 1 v. HKS Joint Venture P'ship
 
 ,
 
 793 P.2d 661
 
 (Colo. App. 1990) (concluding the district could charge an availability of service fee for water and sewer services to vacant unimproved lots within the district);
 
 McMillan v. Texas Nat. Res. Conservation Comm'n
 
 ,
 
 983 S.W.2d 359
 
 (Tex. App. 1998) (holding standby fees for available water and sewer services could be charged even though lots were not connected to the water and sewer mains), they are not necessarily persuasive, as is the case with
 
 *160
 

 Holmes Harbor
 
 , and they are not binding on this Court. What is binding on this Court is the plain meaning of the Session Law, in keeping with North Carolina case law, which compels a conclusion that Oak Island was authorized to collect Fees from Plaintiffs.
 

 Harmony with N.C. Gen. Stat. § 160A-317(a)
 

 Plaintiffs next argue that the Session Law's term "availability of sewer service" is not in harmony with the terms of N.C. Gen. Stat. § 160A-317(a), which governs the power of a city to require connections to water or sewer service. Plaintiffs assert that because § 160A-317(a) only requires an owner of developed property to connect the owner's premises to a sewer line, or pay a fee in lieu thereof, the Session Law may only require an owner of a developed property to pay a sewer debt fee. Plaintiffs' argument lacks merit.
 

 When statutes "deal with the same subject matter, they must be construed
 
 in pari materia
 
 , and harmonized to give effect to each."
 
 Gravel Co. v. Taylor
 
 ,
 
 269 N.C. 617
 
 , 620,
 
 153 S.E.2d 19
 
 , 21 (1967). "When, however, the section dealing with a specific matter is clear and understandable on its face, it requires no construction."
 
 State ex rel. Utilities Comm'n. v. Lumbee River Elec. Membership Corp.
 
 ,
 
 275 N.C. 250
 
 , 260,
 
 166 S.E.2d 663
 
 , 670 (1969) (citations omitted).
 

 Even assuming, for this discussion's sake, the Session Law and N.C. Gen. Stat. § 160A-317(a) deal with the same general subject matter - the regulation of town sewer systems - each law addresses a different, specific
 
 *890
 
 matter regarding such regulation, and each law is clear and understandable on its face. Thus, no construction is needed to give effect to each.
 

 The Session Law addresses Oak Island's authority to charge land owners Fees to pay for sewer debt service. The law specifically allows the creation of a fee-supported, as opposed to use-supported, sewer treatment district for "all properties that are or can be served by the sewage collection and treatment plant" and to "impose annual fees for the availability of sewer service" upon "owners of each dwelling unit or parcel of property that could or does benefit from the availability of sewage treatment." S.L. 2006-54 §§ 1, 3, 4.
 

 N.C. Gen. Stat. § 160A-317 addresses a city's authority to require connections to water or sewer service and charge for such connections. The law specifically allows a city to require "an owner of developed property on which there are situated one or more residential dwelling units or commercial establishments ... to connect the owner's premises
 
 *161
 
 with the water or sewer line or both, and may fix charges for the connections." N.C. Gen. Stat. § 160A-317(a). The statute further allows the city to "require payment of a periodic availability charge" in lieu of requiring connection.
 

 Id.
 

 While N.C. Gen. Stat. § 160A-317 applies only to "an owner of developed property on which there are situated one or more residential dwelling units or commercial establishments[,]" the Session Law lacks such limiting language, and explicitly applies to "all properties that are or can be served by the sewage collection and treatment plant" and to "owners of each dwelling unit or parcel of property that could or does benefit from the availability of sewage treatment." S.L. 2006-54 §§ 1, 4.
 

 Had the legislature intended for the Session Law to impose annual fees for the availability of sewer service within the district only upon owners of developed property, the legislature could have mirrored the language in N.C. Gen. Stat. § 160A-317(a) when drafting the Session Law, making it applicable only to "an owner of developed property on which there are situated one or more residential dwelling units or commercial establishments ...." N.C. Gen. Stat. § 160A-317(a). But the legislature did not do so, and we will not read language into the Session Law that is not reflected therein.
 
 N.C. Dep't of Corr. v. N.C. Med. Bd.
 
 ,
 
 363 N.C. 189
 
 , 201,
 
 675 S.E.2d 641
 
 , 649 (2009) (We "presum[e] that the legislature carefully chose each word used.") (citation omitted).
 

 I thus conclude that the Session Law granted Oak Island the statutory authority to impose the Fees upon owners of undeveloped parcels.
 

 C. No "Full Credit or Rebate" of Fees
 

 Plaintiffs next argue "it was error to grant Defendant's motion for summary judgment for the reason that Defendant provided a full credit or rebate of the sewer district fee to taxpayers on developed lots" thereby: (1) denying Plaintiffs the equal protection of the law, (2) taking Plaintiffs' private property for public use without just compensation, (3) violating the requirement for just and equitable taxation, (4) violating the requirement for exclusive public purpose of taxes, and (5) violating the principle of uniformity of taxation. I address each argument in turn.
 

 Equal Protection
 

 Plaintiffs argue they were denied equal protection of the law "because [D]efendant provided a full credit or rebate of the sewer district fee to taxpayers on developed lots[.]" Plaintiffs more specifically argue, "[t]here could be no reasonable basis for the classifications of improved and unimproved properties, and for the consequently differential
 
 *162
 
 treatment of them, the unimproved properties being required to pay, and the improved properties being totally subject to refund."
 
 [9]
 

 *891
 
 But, as Plaintiffs conceded at oral argument and this opinion details above, Defendant did not provide a full credit or rebate of the Fees to owners of developed lots. Owners of developed parcels paid sewer debt service fees on a monthly basis throughout the year, but were also charged the yearly Fee on their year-end tax bill. Those owners received a credit in the amount of the Fee on their year-end tax bill to avoid double-billing them for sewer debt service payments.
 

 Plaintiffs' equal protection argument thus fails.
 

 Taking Without Just Compensation
 

 Plaintiffs next argue that the Fee imposed on undeveloped property owners is a taking of private property for public use without just compensation, in violation of Article I, Section 19 of the North Carolina Constitution. Plaintiffs argue that "[t]o lay a burden on one group of taxpayers for the benefit solely of another group of taxpayers, is a clear violation of the principle prohibiting taking of private property for public use without just compensation, and is contrary to Section 19."
 

 Plaintiffs' argument again fails because, as described above, owners of developed parcels were not given full refunds of the Fees. To the extent Plaintiffs are arguing that
 
 any
 
 Fees imposed on the undeveloped property owners are takings, irrespective of the Fees imposed on developed property owners, this argument too fails.
 

 The Federal Takings of the Fifth Amendment of the United States Constitution forbids the taking of private property by the government without just compensation.
 
 Sullivan v. Pender Cty.
 
 ,
 
 196 N.C. App. 726
 
 , 731,
 
 676 S.E.2d 69
 
 , 73 (2009) (quotation marks and citations omitted). "[A]lthough the North Carolina Constitution does not contain an express provision prohibiting the taking of private property for public use without payment of just compensation, this Court has inferred such a provision as a fundamental right integral to the 'law of the land' clause in article I, section 19 of our Constitution."
 
 Finch v. City of Durham
 
 ,
 
 325 N.C. 352
 
 , 362-63,
 
 384 S.E.2d 8
 
 , 14 (1989) (citations omitted).
 

 "[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services."
 

 *163
 

 United States v. Sperry Corp.
 
 ,
 
 493 U.S. 52
 
 , 63,
 
 110 S.Ct. 387
 
 ,
 
 107 L.Ed.2d 290
 
 (1989). Moreover, a user fee need not "be precisely calibrated to the use that a party makes of Government services. ... All that we have required is that the user fee be a fair approximation of the cost of benefits supplied."
 

 Id.
 

 at 60
 
 ,
 
 110 S.Ct. 387
 
 (internal quotation marks and citation omitted);
 
 see
 

 Massachusetts v. United States
 
 ,
 
 435 U.S. 444
 
 , 468,
 
 98 S.Ct. 1153
 
 ,
 
 55 L.Ed.2d 403
 
 (1978) (holding that a federal fee imposed on civil aircraft was a fair approximation of the cost of the benefits supplied where "[e]very aircraft that flies in the navigable airspace of the United States has available to it the navigational assistance and other special services supplied by the United States ... [a]nd even those aircraft, if there are any, that have never received specific services from the National Government benefit from them in the sense that the services are available for their use if needed and in that the provision of the services makes the airways safer for all users").
 

 The Fee in this case is not a taking because it is a "reasonable user fee" "imposed for the reimbursement of the cost of government services" and is a fair approximation of the cost of benefits supplied.
 
 Sperry
 
 ,
 
 493 U.S. at 63
 
 ,
 
 110 S.Ct. 387
 
 . The Session Law specifies that the Fees "may not exceed the cost of providing the sewer collection facility within the municipality and the cost of the contract with a county to provide it with the facilities to transport, treat, and dispose of the municipality's effluent." S.L. 2006-54 § 4. Furthermore, the Session Law requires Oak Island to "credit the fees collected within the District to a separate fund to be used only to pay the debt service of the sewer system."
 

 Id.
 

 at § 6. The Session Law is clear, and Plaintiffs make no argument to the contrary,
 
 *892
 
 that the fees are being "imposed for the reimbursement of the cost of government services."
 
 Sperry
 
 ,
 
 493 U.S. at 63
 
 ,
 
 110 S.Ct. 387
 
 .
 

 Moreover, Plaintiffs are directly and indirectly benefited by Oak Island's comprehensive sewer system. Sewer lines are present in front of each parcel of property and are ready for immediate use when Plaintiffs choose to connect to the system. Furthermore, Plaintiffs benefit now and in the future from the installation and maintenance of Oak Island's comprehensive sewer system which helps prevent and eliminate hazardous pollution. As our Supreme Court explained in
 
 Drysdale v. Prudden
 
 ,
 
 195 N.C. 722
 
 ,
 
 143 S.E. 530
 
 (1928),
 

 It is a matter of common knowledge that odor from human excrement in a fairly thickly settled community will affect all around, the shifting wind makes it offensive in the entire district. The water and sewer eliminates this condition not only the annoyance, but the danger that comes from the fly feeding on filth and carrying the germ and thus pollute and
 
 *164
 
 poison food and drink. A water and sewer system eliminates the breeding places. It is a well known medical fact that filth breeds typhoid fever and the fly carries the germ.
 
 See
 

 Storm v. Wrightsville Beach
 
 , [
 
 189 N.C. 679
 
 ,
 
 128 S.E. 17
 
 (1925) ]. ... Water, sewer, drainage and screening have been of untold value to the human family.
 

 Id.
 
 at 731,
 
 143 S.E. at
 
 534-35 ;
 
 see also
 

 Board of Water & Sewer Comm'rs of the City of Mobile v. Yarbrough
 
 ,
 
 662 So.2d 251
 
 , 254 (Ala. 1995) ("The citizens ... are directly or indirectly affected by the results of the pollution of [public] waters and the beneficial results to be obtained by the elimination of the pollution will be a public benefit to the entire community and citizens thereof.").
 

 Because the Fees are user fees for benefits Plaintiffs received, Plaintiffs' takings argument also fails.
 

 Tax-based Arguments
 

 Plaintiffs next argue that the Fee is actually a "true tax and subject to all of the principles to taxation." Based on this premise, Plaintiffs argue that the Fee violates Article V, Sections 2(1) and 2(2) of the North Carolina Constitution, which relate to the power of taxation, and
 
 N.C. Gen. Stat. § 105-380
 
 (a), which relates to tax refunds.
 

 Our Supreme Court has recognized that a local assessment for public improvements is not a tax, as taxes are levied for purposes of general revenue.
 
 S. Ry. Co. v. City of Raleigh
 
 ,
 
 9 N.C. App. 305
 
 ,
 
 176 S.E.2d 21
 
 (1970).
 

 "[L]ocal assessments ... are not taxes within the meaning of that term as generally understood in constitutional restrictions and exemptions. They are not levied and collected as a contribution to the maintenance of the general government, but are made a charge upon property on which are conferred benefits entirely different from those received by the general public. They are not imposed upon the citizens in common at regularly recurring periods for the purpose of providing a continuous revenue, but upon a limited class in return for a special benefit. These assessments, it has been suggested, proceed upon the theory that when a local improvement enhances the value of neighboring property, it is reasonable and competent for the Legislature to provide that such property shall pay for the improvement."
 

 *165
 

 Id.
 
 at 309,
 
 176 S.E.2d at 23
 
 (quoting
 
 Tarboro v. Forbes
 
 ,
 
 185 N.C. 59
 
 , 61,
 
 116 S.E. 81
 
 , 82 (1923) ;
 
 see also
 

 Kenilworth v. Hyder
 
 ,
 
 197 N.C. 85
 
 , 90,
 
 147 S.E. 736
 
 , 738 (1929) ("Provisions relating to taxation generally are uniformly held not applicable to local assessments or special taxation for improvements.").
 

 Here, the Session Law creates a fee-supported sewer district for Oak Island. The Fees are specifically allocated to pay down the debt on Oak Island's sewer system, which provides a purely local improvement to the residents of Oak Island and helps a limited class of citizens by providing them with benefits different from those of the general public. Because those living in Oak Island receive a special, distinct benefit in exchange
 
 *893
 
 for paying the Fees, the Fees are not being collected for general revenue purposes. Accordingly, the Fees are not taxes in the meaning of the North Carolina Constitution.
 

 Because the Fees are not taxes, Plaintiffs' tax-based arguments also fail.
 

 Conclusion
 

 I conclude there is no merit to Plaintiffs' arguments that the Fees are unauthorized by statute, unconstitutional, and violative of certain tax principles. As I conclude there is no genuine issue as to any material fact and Oak Island is entitled to judgment as a matter of law, I would affirm the trial court's order granting summary judgment in favor of Oak Island.
 

 [1]
 

 "A local act refers to an act of the General Assembly that relates to one or more specific local governments." Frayda Bluestein,
 
 Coates' Canons Blog: What Is A Local Act?
 
 , UNC School of Government (April 6, 2010), https://canons.sog.unc.edu/what-is-a-local-act/.
 

 [2]
 

 The original 2004 Session Law applied only to Holden Beach, with the 2006 Session Law adding Oak Island to the same authority.
 
 2006 N.C. Sess. Laws 85
 
 , 85, ch. 54, § 1. The 2010 Session Law added Caswell Beach.
 
 2010 N.C. Sess. Laws 34
 
 , 34, ch. 29, § 1.
 

 [3]
 

 For the Town of Oak Island, a fiscal year runs from July 1 through June 30.
 

 [4]
 

 The dissent cites
 
 Durango W. Metro. Dist. #1 v. HKS Joint Venture P'ship
 
 ,
 
 793 P.2d 661
 
 (1990), and
 
 McMillan v. Texas Natural Res. Conservation Comm'n
 
 ,
 
 983 S.W.2d 359
 
 (1998), as instructive opinions from other jurisdictions, which stand for the contrary proposition. The holdings of those cases are misconstrued. The property owner in
 
 Durango
 
 had only argued (1) that the sewer district did not fall within the statutory definition of a "municipality," and thus lacked the authority to impose availability of service charges altogether, and (2) that the availability fees were subject to a statutory "fifty percent of ... regular service charges" limitation.
 
 Durango W. Metro. Dist. #1
 
 ,
 
 793 P.2d at 663
 
 . The property owner did not argue that the district had exceeded its statutory authority by assessing availability fees against the plaintiff's vacant, unimproved property. In
 
 McMillan
 
 , the pertinent statute explicitly authorized the assessment of standby fees for available sewer services against "
 
 undeveloped property
 
 ."
 
 McMillan
 
 ,
 
 983 S.W.2d at 361
 
 (emphasis added).
 

 [5]
 

 Oak Island reminded the trial court that when Plaintiffs dismissed their declaratory judgment action, Oak Island had notified the court that damages for fiscal years 2015 through 2017 were no longer applicable. Oak Island also explained that Exhibit D was prepared in response to Plaintiffs' request for declaratory judgment, but, that it probably would not have submitted this exhibit had it known that Plaintiffs were going to dismiss their declaratory judgment claim.
 

 [6]
 

 The relevant text of S.L. 2006-54 appears in the body of S.L. 2004-96. The text of S.L. 2006-54 indicates that Section 8 of S.L. 2004-96 reads as rewritten: "SECTION 8. This act applies only within the Town of Holden Beach
 
 Towns of Holden Beach and Oak Island
 
 ."
 

 [7]
 

 "Fiscal year 2009" means the time period of 1 July 2008 through 30 June 2009. Other fiscal year references are computed the same way.
 

 [8]
 

 Plaintiffs failed to obtain rulings on their oral motions to amend their complaint under Rule 15(b) or supplement their complaint under Rule 15(d) of the Rules of Civil Procedure to bring claims for recovery of Fees paid in 2015, 2016, and 2017. Accordingly, these arguments are not preserved for our appellate review.
 
 See
 
 Section V.A. Therefore, the only issue before this court is Plaintiffs' complaint for recovery of Fees paid during the years 2010-14.
 

 [9]
 

 Plaintiffs make no equal protection argument based on any difference in the amount of sewer debt service fees charged to the developed and undeveloped parcel owners or the methods used to collect the fees. Those arguments are thus not before us.